**IN THE UNITED STATES ISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| INSITE CORPORATION, | |
| **Plaintiff,** | |
| **v.** | **Civil No.** 16-2010 (FAB) |
| WALSH CONSTRUCTION COMPANY, PUERTO RICO, | |
| **Defendant**. | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is appellant Insite Corporation ("Insite")'s appeal from the United States Bankruptcy Court for the District of Puerto Rico ("bankruptcy court"). Insite is appealing the bankruptcy court's Opinion and Order granting appellee Walsh Construction Company ("Walsh")'s summary judgment motion, Case No. 11-11209, Docket No. 123, the Opinion and Order denying Insite's motion for reconsideration of the summary judgment decision, Case No. 11-11209, Docket No. 146, and the judgment dismissing the adversary proceedings between Insite and Walsh, Case No. 11-11209, Docket No. 147. For the reasons set forth below, the Court **AFFIRMS** the bankruptcy court's decisions *in toto*.

## I.   Background

This case arises from a dispute between Walsh, a building contractor, and Insite, a subcontractor.[1]  On September 30, 2010, the Department of Veterans Affairs awarded Walsh a construction contract titled "Seismic Correction Phase II, Outpatient Addition" ("Veteran Affairs project").  (Case No. 11-11209, Docket No. 123 at p. 2.)  Subsequently, Walsh entered into a subcontract ("executory contract") with Insite to complete certain construction services in furtherance of the Veteran Affairs project.  Id.  The executory contract required Insite to commission and compensate its own subcontractors and suppliers.  (Case No. 11-11209, Docket No. 146 at p. 2.)

Insite fulfilled its contractual obligations without incident until the end of 2011.  As Insite's own records reflect, Walsh paid Insite in full for all final pay applications as of December 30, 2011.  (Case No. 11-11209, Docket No. 123 at p. 3.) Insite, however, failed to pay its subcontractors and suppliers in violation of the executory contract.  Id.  Because of Insite's failure to compensate subcontractors and suppliers, Walsh delivered a notice of default to Insite at approximately 9:00 a.m.

---

[1] The facts set forth herein are based on the undisputed material facts contained in the Summary Judgment Opinion and Order and Opinion, and Order denying Insite's motion for reconsideration. (Case No. 11-11209, Docket Nos. 123 & 146.)

on December 30, 2011.  Id.  That very same day, at approximately 5:49 p.m., Insite filed for Chapter 11 bankruptcy protection in the bankruptcy court.  Id.

Two months after filing for bankruptcy, Insite moved to assume the executory contract.[2]  Id. at p. 3.  In the motion, Insite conceded that it was in default, but proposed to cure arrears upon assumption of the executory contract.  Id.  Before the bankruptcy court ruled on the motion to assume the executory contract, Insite demanded payment from Walsh.  (Case No. 11-11209, Docket No. 146 at p. 2.)  Walsh responded that Insite's failure to pay its subcontractors and suppliers constituted a breach, precluding further payments from Walsh.  Id.  The bankruptcy court granted the motion to assume the contract on March 29, 2012.  (Case No. 11-11209, Docket No. 123 at p. 3.)  Insite remained in default, however, and completed no additional work in furtherance of the executory contract.  Id.

Insite initiated an adversary proceeding against Walsh on May 29, 2012 based on alleged violations of the automatic stay set forth in 11 U.S.C. Section 362.  Id.  According to Insite, Walsh

---

[2] Insite, along with its creditor Banco Cooperativo de Puerto Rico and surety company United Surety and Indemnity Company, requested that the bankruptcy court permit:  (1) assumption of the executory contract, and (2) the use of funds to satisfy operating expenses at the Veteran Affairs project.  (Case No. 11-11209, Docket No. 44 at pp. 1-2.)

withheld payments, subcontracted personnel to complete work assigned to Insite, and confiscated property owned by Insite. See Complaint, Case No. 11-11209, Docket No. 1. Insite claims that Walsh withheld payments in the amount of $586,800, seized tools belonging to Insite at the Veteran Affairs project site, and demanded damages in the amount of $394,000 plus legal expenses and attorney fees. Id. In essence, Insite argues that it is entitled to payment from Walsh because outstanding executory contract balances fall within the bankruptcy estate.[3]

On March 29, 2015, the bankruptcy court granted Walsh's motion for summary judgment, concluding that Walsh had not violated the automatic stay. In so doing, the bankruptcy court rejected Insite's argument that executory contract balances were property of the bankruptcy estate and protected by the automatic stay. (Case No. 11-11209, Docket No. 123 at p. 4.) The bankruptcy court denied Insite's motion for reconsideration and dismissed the adversary proceeding between Insite and Walsh on March 28, 2016. (Case No. 11-11209, Docket Nos. 146 & 147.)

---

[3] The bankruptcy estate is created upon the filing of a bankruptcy petition and is subject to the jurisdiction of the bankruptcy court. 11 U.S.C. § 541. Property of the bankruptcy estate is protected by the automatic stay, which includes a stay on litigation and lien enforcement. 11 U.S.C. § 362(a).

## II.  Standard of Review

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).  On appeal, the Court may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings.  Fed.R.Bkrtcy.P. 8013.  "The scope of this task, however, varies depending on whether the appeal revolves around findings of facts or conclusions of law." Segarra-Miranda v. Perez-Padro, 482 B.R. 59, 67 (D.P.R. 2012).  The Court considers a bankruptcy court's conclusions of law de novo.  Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997).  The Court must, therefore, analyze and resolve issues from the same perspective of the bankruptcy court as if the issues were decided for the first time.  Segarra-Miranda, 482 B.R. at 67 (citing Water Keeper Alliance v. U.S. Dept. of Defense, 271 F.3d 21, 31 (1st Cir. 2001)).  Accordingly, the Court will review the bankruptcy court's opinion and order granting summary judgment de novo.

## III. Discussion

Insite appeals three decisions from the bankruptcy court: (1) the grant of summary judgment to Walsh, Case No. 11-11209, Docket No. 123; (2) the denial of Insite's motion to reconsider summary judgment, Case No. 11-11209, Docket No. 146; (3) and dismissal of the adversary proceeding, Case No. 11-11209, Docket No. 47.  The Court will address only the bankruptcy court's

decision granting summary judgment to Walsh because there is no
reason to disturb the bankruptcy court's denial of Insite's motion
for reconsideration or dismissal of the adversary proceeding if
the summary judgment decision withstands *de novo* review.

    Insite has raised nine issues on appeal.  Insite first
contends that the bankruptcy court erred in "completely
disregarding evidence" that Walsh owed Insite $179,897 for work
performed in December 2011.  (Case No. 11-11209, Docket No. 3 at
p. 3.)  This argument lacks merit.  In its statement of undisputed
material facts, Walsh averred:

> [A]s of December 30, 2011, according to
> Insite's own Payment Application, Insite had
> been fully paid for all final Payment
> Applications which Insite had submitted to
> Walsh.

(Case No. 11-11209, Docket No. 119 at p. 2.)  Insite admitted that
this statement was true, conceding that Walsh had paid Insite in
full as of December 30, 2011, the date in which Insite filed for
bankruptcy.  Id.  Accordingly, the Court rejects Insite's argument
that the bankruptcy court disregarded "evidence" that Walsh owed
Insite any money as of December 30, 2011.

    The second, fifth, seventh, and eighth issues raised on appeal
are premised on Insite's argument that the bankruptcy court
disregarded evidence that Walsh owed Insite $591,953 for work

performed from December 2011 through March 2012.  <u>Id</u>. at pp. 3-4.[4]
This argument is unpersuasive.

After the bankruptcy court granted Insite's motion to assume
the executory contract, essentially providing Insite a second
opportunity to fulfill the contract with Walsh, Insite again failed
to pay its subcontractors and suppliers.  (Case No. 11-11209,
Docket No. 123 at p. 4.)  The First Circuit Court of Appeals has
held that "contract retainages do not become property of a
contractor until contractual obligations such as payment of the
laborers and materialmen are met."  <u>Caribbean Resort Constr. &
Maint., Inc. v. Coco Beach Util. Co.</u>, 318 B.R. 241, 247 (Bankr.
D.P.R. 2003) (citing <u>Segovia Development Corporation v.
Constructora Maza, Inc.</u>, 628 F.2d 724, 728 (1st Cir. 1980)).
Because "Insite never cured arrears by paying laborers, suppliers
and materialmen," it never became entitled to contract balances
after defaulting on payments to its subcontractors and suppliers.
(Case No. 11-11209, Docket No. 147 at p. 7.)  That is, Walsh did

---

[4] The second, fifth, seventh, and eight issues on appeal assert,
respectively, that: (1) the bankruptcy court disregarded evidence
that Walsh owed Insite $591,953, (2) the bankruptcy court erred in
finding that Insite owed contractors more than $591,953, (3) the
bankruptcy court erred in concluding that Walsh did not owe Insite
$591,953 without receiving and paying claims from subcontractors
and suppliers and, (4) the bankruptcy court erred in disregarding
evidence that Walsh defaulted on $591,953 before the Court granted
Insite's motion to assume its contract with Walsh.  (Docket No. 3
pp. 3-4.)

not "owe" Insite $591,953 because Insite breached the executory
contract.   As the bankruptcy court held, "these monies are not
property of the estate and consequently, Walsh did not violate the
automatic stay by withholding payment from Insite."[5] Id.

The  third  and  fourth  issues  on  appeal  claim  that  the
bankruptcy  court  erred  by  not  voiding  Walsh's  post-petition
assertion  of  contractual  set-off  rights  without  obtaining  relief

---

[5] In its reply brief, Insite contends that the bankruptcy court
misapplied Caribbean Beach, 318 B.R. 241 (Bank. P.R. 2003). Docket
No.  9  at  p.  4.    According  to  Insite,  Caribbean  Beach  is
distinguishable because the laborers and suppliers in that case
"asserted direct claims" to the owner of the project, bypassing
the subcontractor.  (Case No. 11-11209, Docket No. 9 at p. 5.)  As
Insite  notes,  subcontractors  and  suppliers  submitted  claims  to
Insite, not to Walsh.  Id.  The court in Caribbean Beach, however,
did not anchor its analysis on the distinction between direct and
indirect claims. 318 B.R. 241 (Bankr. P.R. 2003).   In Caribbean
Beach, as in this case, the subcontractor neglected to pay laborers
and suppliers in violation of its contract with the project owner.
Id.  The project owner consigned with the Clerk of the Court funds
to  pay  laborers  and  suppliers  to  avoid  additional  litigation
pursuant to Puerto Rico law allowing laborers and suppliers to sue
owners directly.  Id. at p. 14.   This distinction between direct
and indirect claims is tangential to the court's central ruling
that "the retainage held by Coco Beach Utility under the Second
Contract is not property of the estate under section 541(a)(1) of
the Bankruptcy Code until the laborers and suppliers are paid in
full according to the terms and conditions set forth in the Second
Contract." Id. at p. 25.  This Court, therefore, rejects Insite's
contention  that  the  bankruptcy  court  erred  in  its  understanding
and application of First Circuit Court of Appeals precedent.

from the automatic stay.[6]   (Case No. 11-11209, Docket No. 3 at
pp. 14 & 26.)  Once more, this argument is based on the assumption
that Walsh withheld contract balances from Insite.  As the Court
previously discussed, these contract balances were not part of the
bankruptcy  estate  because  Insite  defaulted  on  payments  to
subcontractors and suppliers.  (Case No. 11-11209, Docket No. 123
at p. 6.) ("Walsh did not violate the automatic stay by withholding
payment to [Insite].")  What is more, pursuant to the executory
contract, failure to "make prompt payment for [Insite's] workers,

---

[6]  Article  3.12  of  the  executory  contract  provides  that:
"Contractor [Walsh] may withhold amounts otherwise due under this
agreement  or  any  other  agreement  between  the  parties  to  cover
Contractor's  [Walsh's]  reasonable  estimate  of  any  costs  or
liability Contractor [Walsh] has incurred or may incur for which
Subcontractor [Insite] may be responsible."  (Docket No. 9 at
p. 7.)

     Article 8.1 of the executory contract states that: "If the
Subcontractor [Insite] refuses or fails to [. . .] make prompt
payment for its workers, subcontractors, and suppliers [. . .] and
fails within seventy-two hours after receipt of written notice to
commence correction of such default the contractor shall have the
right to any of the following remedies: I) supply such number of
workers and quantity of materials, equipment, and other facilities
as the contractor [Walsh] deems necessary for the completion of
the Subcontractor's work [. . .] and charge the cost to the
subcontractor who shall be liable to the payment of the same,
including reasonable overhead, profit and attorney fees; contract
with  additional  contractors  to  perform  such  part  of  the
Subcontractor's work as the Contractor shall determine [. . .] and
**charge the cost to the Subcontractor; and/or II) withhold payments
of any money due the Subcontractor pending corrective action to
the extent required by and to the satisfaction of the Contractor."**
(Docket No. 9 at p. 15.)  (emphasis added)

subcontractors, and suppliers" permitted Walsh to "withhold payments of any money due [Insite] pending corrective action." (Docket No. 6 at p. 17.) Accordingly, the Court rejects the notion that the automatic stay prevented Walsh from withholding contract balances as a basis to reverse the bankruptcy court's decisions.

With regard to the sixth issue on appeal, Insite argues that the bankruptcy court concluded erroneously that Walsh received funds from the federal government despite failing to "pay amounts owed to Debtor and others due to labor and materials furnished in the Project." (Docket No. 3 at p. 4.) Insite infers that Walsh should not receive funds from the federal government because Walsh withheld payments to Insite. Id. Insite's argument assumes that payment to Walsh from the federal government was contingent on Walsh paying Insite. There is nothing in the record to support this allegation and Insite has presented no authority in support of this argument. Furthermore, the Court is at a loss as to what specific remedy Insite seeks in advancing this argument.

The ninth and final issue on appeal is Insite's claim that the bankruptcy court incorrectly held that "pursuant to the assumption order [Insite] became obligated to comply with obligations under the Subcontract after Walsh had defaulted on its payment obligations under the same." (Docket No. 3 at p. 4.) The argument assumes incorrectly that Walsh defaulted on payment

obligations to Insite.  For the reasons previously discussed, Walsh

was under no obligation to make any payments to Insite after the

latter defaulted on its obligations to its subcontractors.[7]  In

sum, no issue raised in Insite's appeal warrants this Court to

disturb the bankruptcy court's final decisions.

**IV.  Conclusion**

For the reasons set forth above, the bankruptcy court's

decision granting summary judgment, Case No. 11-11209, Docket

No. 123, is **AFFIRMED**.  Furthermore, the bankruptcy court's opinion

and order denying Insite's motion to reconsider the summary

---

[7] Moreover, the Court rejects Insite's calculations as flawed because they belie previous representations to the bankruptcy court.  To arrive at the amount of $591,953, Insite cites to three outstanding pay applications submitted to Walsh.  (Docket No. 3 at pp. 8-9.)  The first pay application is based upon work and materials furnished by Insite before December 30, 2011.  <u>Id</u>. Insite's reliance on this first pay application is disingenuous. This Court reiterates that Insite admitted that as of December 30, 2011, Walsh had paid Insite for all final pay applications.  (Case No. 11-11209, Docket No. 147 at p. 5.)  Insite cannot claim simultaneously that Walsh paid and failed to pay Insite for work and materials furnished before December 30, 2011.  <u>Id</u>.  This Court will not disturb the bankruptcy court's decision granting summary judgment on contradictory and inconsistent grounds.  The remaining two pay applications that Insite relies upon to arrive at the $591,953 amount stem from alleged work and materials provided by Insite after failing to pay subcontracts and suppliers.  (Docket No. 3 at p. 9.)  Because Insite's failure to pay its subcontractors and supplies constituted a breach of the executory contract, as the bankruptcy court ruled, Insite "never became entitled to receive any further payment from Walsh."  (Case No. 11-11209, Docket No. 147 at p. 7.)  Thus, the Court rejects Insite's second, fifth, seventh, and eighth issues on appeal because they are premised on inaccurate assumptions.

Civil No. 16-2010 (FAB)                                                    12

judgment decision, Case No. 11-11209, Docket No. 146, and judgment

dismissing the adversary proceeding, Case No. 11-11209, Docket

No. 147, are also **AFFIRMED**.

Judgment shall be entered accordingly.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, March 21, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE